UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN NATHANIEL MURRAY,<br>　　　　　　　　　　　Plaintiff,<br><br>　　　　　-v-<br><br>BRAG SALES INC., D/B/A UNEEDA ENTERPRISES, and BRADLEY J. GRUBER,<br>　　　　　　　　　　　Defendants. | 23-CV-6610 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

　　　　Plaintiff Jonathan Nathaniel Murray, proceeding *pro se*, brings this employment discrimination action against Defendants Brag Sales Inc., d/b/a Uneeda Enterprises ("Uneeda") and Bradley J. Gruber under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12201, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, §§ 8-101, *et seq.*  Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim.  For the reasons that follow, the motion to dismiss is denied with respect to Murray's ADA, Title VII, Section 1981, and NYSHRL claims, and granted with respect to Murray's NYCHRL claim.

1

I.   **Background**

    A.   **Factual Background**

The following facts are taken from Murray's complaint and opposition to the motion to dismiss,[1] and are assumed to be true for purposes of resolving Defendants' motion.

Plaintiff Jonathan Nathaniel Murray, who is African American, began working at Uneeda Enterprises as a delivery driver and warehouse staffer in November 2018. (*See* ECF No. 1 at 3; ECF No. 1-1 at 3.) Murray describes himself as disabled or perceived as disabled due to diabetes. (ECF No. 1 at 4.) According to his co-worker, Murray was always punctual and good at his job, and worked well with others, but his supervisor Carlos Trastoy "wasn't easy." (ECF No. 23 at 40.) Trastoy is Hispanic, and he allegedly treated "[a]nyone who was Hispanic . . . better than black/white." (*Id.* at 43.) Trastoy treated Black people with less patience and denied them overtime pay. (*Id.*)

On or around October 15, 2019, Murray took a medical leave. (ECF No. 1-1 at 3.) On October 15, 2019, he texted Peter Martorana, a manager at Uneeda, that he "was not coming to work [b]ecause [his] blood sugar was too high" and that his doctor told him "to go to the emergency room because [he] could have went into a coma." (ECF No. 23 at 4, 22.) On October 17, 2019, Murray sent his employer a letter from the Elmhurst Hospital Center, stating that he had been hospitalized. (*See id.* at 4, 15.) On October 19, 2019, Defendant Bradley J.

---

[1] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Because Murray is proceeding *pro se*, the Court finds it appropriate to consider new facts raised in his opposition papers and exhibits "to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); *see also Elliott v. Nestle Waters N. Am. Inc.*, No. 13-CV-6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (adopting report and recommendation) (considering new exhibits "in light of the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss").

Gruber, the owner of Uneeda, sent Murray a text that stated: "Heard you were in the hospital. Hope you are feeling better soon." (*Id.* at 28.) On or around October 21, 2019, Murray "returned to work and informed [his] employer of [his] medical condition, and the need for a reasonable accommodation." (ECF No. 1-1 at 3.) However, Uneeda "planned on [firing] [him] befor[e] [he] left the hospital." (ECF No. 1 at 6.) Prior to this medical leave, Murray spent the majority of his workday driving, but after his return to work, he "was only allowed to drive a few hours on or about two separate occasions." (ECF No. 1-1 at 3.) His supervisor was overheard stating that Murray "was no longer allowed to drive due to concerns about [his] medical condition." (*Id.*) In or around November 2019, Uneeda hired a new delivery driver/warehouse employee, who is Hispanic and not disabled. (*See id.*; ECF No. 23 at 43.)

On December 9, 2019, Murray was sweeping the warehouse when Trastoy "pulled [him] to the side" and started "yelling in [his] face" in an apparent attempt to provoke and record him. (ECF No. 1-1 at 1). When Trastoy saw that Murray "was not falling for his trap to give him an excuse to fire [him]," Trastoy fired Murray on the spot. (*Id.*) Two days later, Gruber texted Murray. (*Id.*) After Murray "explained to him what happened," Gruber "agreed . . . that [Trastoy] was wrong" and that he would tell Trastoy to apologize. (*Id.*) Murray expected to receive a call, but he never received further communication. (*Id.*)

A comparator, who is neither African American nor disabled, "was not disciplined or discharged after engaging in multiple verbal altercations with [their] supervisor." (*Id.* at 3.) Another comparator, who is neither African American nor disabled, was not "stopped from driving after being involved in multiple on the job accidents." (*Id.* at 3-4.)

  **B.**  **Procedural History**

On July 22, 2020, Murray filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1 at 6.) The EEOC found reasonable cause to

3

believe that the alleged violations occurred but was unable to obtain a settlement. (*See* ECF No. 1-1 at 5.) Murray received the right to sue letter on June 8, 2023 and timely filed this suit on July 28, 2023. (ECF No. 1 at 6-7.) On November 27, 2023, Defendants moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 19.) Murray filed an opposition on February 6, 2024 and attached twenty exhibits. (ECF No. 23.)

**II.     Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Courts must also afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (internal quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* (internal quotation marks omitted).

III.    Discussion

    A.    **Disability Discrimination: ADA**

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to state a claim for employment discrimination in violation of the ADA, a plaintiff must plausibly allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability."[2] *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 234-35 (2d Cir. 2015).

First, an employer subject to the ADA must have "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). The alleged wrongful conduct occurred in 2019. A Weekly Employee Attendance Sheet included in Murray's opposition papers indicates that Uneeda had approximately seventeen employees that year. (*See* ECF No. 23 at 47-49.) All reasonable inferences drawn in favor of Murray, that places Uneeda within the scope of the ADA.

Second, as relevant here, the ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A), (C). Defendants

---

[2] Defendants' memorandum of law in support of their motion to dismiss focuses on attacking a reasonable accommodation theory and a hostile work environment theory of Murray's ADA claim. (*See* ECF No. 21 at 8-10.) However, a more direct ADA claim is that Uneeda discriminated against Murray by firing him on the basis of disability.

argue that diabetes is not a "disability" that substantially limits one or more major life activities. (*See* ECF No. 21 at 9.)  Courts have disagreed on this issue.  *Compare Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 484-86 (S.D.N.Y. 2008) (holding that diabetes is not a disability under the ADA) *with Hensel v. City of Utica*, No. 15-CV-374, 2017 WL 2589355, at *4 (N.D.N.Y. June 14, 2017) ("Given [the ADA Amendments Act of 2008's] changes to the ADA's definition of disability, diabetes is now nearly always a disability under the ADA.") (cleaned up).  Regardless, the ADA Amendments Act of 2008 has made it clear that

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment *whether or not* the impairment limits *or is perceived* to limit a major life activity.

*Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012) (quoting 42 U.S.C. § 12102(3)(A)).  In other words, whether or not diabetes constitutes an actual disability under the ADA, Murray is disabled within the meaning of the ADA if he is *regarded as* having a physical impairment.  Murray alleges that after his return from the hospital, his supervisor stated that he "was no longer allowed to drive due to concerns about [his] medical condition," and Uneeda shifted away most of Murray's job responsibilities as a delivery driver to a newly hired, non-disabled employee. (*See* ECF No. 1-1 at 3.)  That is sufficient to support a reasonable inference that Uneeda regards Murray as physically impaired and to render Murray disabled within the meaning of the ADA.

Murray readily satisfies the remaining elements to state an ADA claim.  He plausibly alleges that he was "qualified to perform the essential functions of the job" by his co-worker's comment that Murray "was actually very good," "did what he had to do," "worked well" with his co-worker, and was "[a]lways punctual." (ECF No. 23 at 40.)  His firing from the Uneeda is clearly an adverse employment action.  And to defeat a motion to dismiss, an ADA plaintiff need only "'give plausible support to a minimal inference of discriminatory motivation' at the

pleading stage." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Murray lost almost all of his driving responsibilities after his medical leave. (*See* ECF No. 1-1 at 3.) His supervisor stated that he "was no longer allowed to drive due to concerns about [his] medical condition," even though a non-disabled comparator was not stopped from driving "after being involved in multiple on the job accidents." (*Id.* at 3-4.) These allegations plausibly support an inference that Murray was fired because of his perceived disability. Thus, Defendants' motion to dismiss Murray's ADA claim is denied.

### B. Racial Discrimination: Title VII and Section 1981

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). On the other hand, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). To prevail in a Section 1981 claim, "a plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). For both causes of action, an inference of discrimination can

arise from "the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge" or "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312 (analyzing Title VII and Section 1981 together).

Uneeda took adverse action against Murray by terminating his employment. In addition, Murray alleges that his supervisor Carlos Trastoy was Hispanic, and "[a]nyone who was Hispanic [was] treated better than black/white." (ECF No. 23 at 43.) Specifically, Trastoy would "treat people who were Black with less patience than others" and deny them overtime pay. (*Id.*) While Uneeda purported to fire Murray based on "concerns about [his] medical condition" and his "history of insubordination," Murray alleges that a non-Black employee "was not disciplined or discharged after engaging in multiple verbal altercations with [their] supervisor," and another non-Black employee was not "stopped from driving after being involved in multiple on the job accidents." (*See* ECF No. 1-1 at 3-4; ECF No. 23 at 4.) Around the time Uneeda fired Murray, it replaced him with a Hispanic driver. (*See* ECF No. 23 at 43.) Taking these allegations together, Murray has met his "minimal" burden under Title VII to support an inference that race was a motivating factor in his termination. Although Section 1981 imposes a higher standard of but-for causation, "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision," since "[o]ften, events have multiple but-for causes." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020). The alleged less favorable treatment of Black employees, the sequence of events leading to Murray's discharge, and his replacement by a non-Black employee plausibly support an inference that racial discrimination is a but-for cause for Murray's termination, even if other factors, including

8

Murray's disability, also contributed to this outcome. Accordingly, Defendants' motion to dismiss Murray's Title VII and Section 1981 claims is denied.

### C.    NYSHRL and NYCHRL

Similar to the ADA and Title VII, the NYSHRL makes it unlawful for an employer "to discharge from employment [an] individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" because of his race or disability. N.Y. Exec. Law § 296(1)(a). In 2019, the NYSHRL was amended "to establish that its provisions should be construed liberally even if 'federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article,' have been construed narrowly." *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022) (quoting *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020)); *see* N.Y. Exec. Law § 300 (2019). Murray's claim under the NYSHRL is premised on the same factual allegations as the other claims: his discharge from Uneeda on the basis of race and disability. Because Murray states a claim under the ADA and Title VII, he also states a claim under the more liberal NYSHRL standard.

On the other hand, NYCHRL only protects New York City residents and non-residents "(1) working in New York [City] or (2) establishing that the challenged conduct had some impact on the plaintiff within [New York City's] geographic boundaries." *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (2024). Murray alleges that he resides in Tobyhanna, Pennsylvania. (ECF No.1 at 2.) He worked for Defendants at their office in Garden City, New York—outside of New York City—where the alleged discriminatory discharge occurred. (*Id.* at 3.) He fails to allege that any discriminatory conduct had an impact within New York City. Thus, Murray fails to state a claim under the NYCHRL.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Defendants shall file an answer to the remaining claims within fourteen days after the date of this opinion and order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Number 19.

SO ORDERED.

Dated: August 27, 2024
       New York, New York

                                              J. PAUL OETKEN
                                           United States District Judge